UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MICHAEL JOHNSTON,

                   Plaintiff,

         v.

CITIBANK, N.A.,

                   Defendant.

------------------------------------------------------------------X

                                                   **MEMORANDUM AND ORDER**
                                                   25-CV-3300-SJB-AYS

**BULSARA, United States District Judge:**

Pro se Plaintiff Michael Johnston ("Johnston") brought this case against Defendant Citibank, N.A. ("Citibank"), alleging a violation of the Truth in Lending Act ("TILA"), for failing to give him adequate notice of a credit card rate increase. Citibank has moved to compel arbitration, based on the terms of the agreement governing the card. For the reasons explained below, the motion is granted.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Johnston initiated this action in New York small claims court on April 16, 2025. (Compl., attached to Defs.' Notice of Removal as Ex. 1, Dkt. No. 1). The Complaint alleges that in September 2024, Citibank violated TILA and its own credit card agreement (the "Card Agreement") by failing to provide the required 45-day notice of an annual percentage rate ("APR") increase, and seeks damages for the improper additional interest Johnston says he was charged. (*Id.*).

Citibank removed the case to this Court on June 12, 2025,[1] relying on the presence of the federal TILA claim. (Notice of Removal at 4). Citibank then filed this motion to compel arbitration and stay on July 25, 2025, (Def.'s Mem. in Supp. of Mot. to Compel Arb. ("Def.'s Mot."), Dkt. No. 20), which Johnston opposes in several filings that the Court considers together, in light of his pro se status, (*see* Pl.'s Mem. in Opp'n to Def.'s Mot. dated July 31, 2025 ("Pl.'s Opp'n"), Dkt. No. 25; Pl.'s Suppl. Notice dated July 31, 2025, Dkt. No. 27).

DISCUSSION

"[T]he Federal Arbitration Act (the 'FAA') creates a 'body of federal substantive law of arbitrability' applicable to arbitration agreements[.]" *All. Bernstein Inv. Rsch. & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "[B]ecause the FAA puts arbitration clauses 'on an equal footing with other contracts,'" *Certain Underwriters at Lloyds, London v. 3131 Veterans Blvd LLC*, 136 F.4th 404, 409 (2d Cir. 2025) (quoting *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024)), an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022) (explaining that Section 2 "renders agreements to arbitrate enforceable as a matter of federal law"); *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (noting that Section 2 reflects "a

---

[1] Citibank's Notice of Removal states it received notice of Johnston's state court action when it received a mailed copy of the Complaint on April 24, 2025. (Notice of Removal at 2).

strong federal policy favoring arbitration as an alternative means of dispute resolution").

"In deciding whether a dispute is arbitrable, [the Court] must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quotation omitted). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

"Arbitration is a matter of contract and consent, and . . . disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase*, 602 U.S. at 145. "Questions concerning the formation and existence of an arbitration agreement must be resolved by courts in the first instance." *Olin Holdings Ltd. v. State*, 73 F.4th 92, 101 (2d Cir. 2023). Therefore, "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–301 (2010)).

"To determine whether parties agreed to arbitrate," the Court must "consider all relevant, admissible evidence submitted by the parties," drawing "all reasonable inferences in favor of the non-moving party"—a standard akin to summary judgment. *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 115 (2d Cir. 2025) (quotation omitted). The party seeking to arbitrate bears the burden on this threshold issue. *Id.* "If the party

seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

"The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Citibank says South Dakota law applies here, pursuant to the choice-of-law provision in the Card Agreement, (Def.'s Mot. at 2; Card Agreement, attached to Decl. of Kelly Booth ("Booth Decl.") as Ex. 2, Dkt. No. 21-2 at 10 ("Federal law and the law of South Dakota govern the terms and enforcement of this Agreement.")), and Johnston does not dispute that point. The Court agrees.

Citibank opened the account at issue on August 20, 2023 and mailed the Card Agreement containing the arbitration provision to Johnston on August 22, 2023, and Johnston then used the card. (Booth Decl. ¶¶ 4, 8–9, 12; Billing Statement, attached to Booth Decl. as Ex. 4, Dkt. No. 21-4). The Agreement provides that its terms cover "any claim, dispute or controversy between you and us arising out of or related to your Account . . . or our relationship." (Card Agreement at 9). And any such claims "are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including [c]laims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law." (*Id.*).

Johnston does not contest receiving the Agreement or using the card.  In any event, Citibank submitted testimony that the company's regular practice was to deliver a copy of the Card Agreement with the credit card when a customer's account was opened, company records indicate the Card Agreement was sent, and there is no documentation that the mail was returned or that Johnston rejected the arbitration agreement before using the card.  (Booth Decl. ¶¶ 8–12).

Johnston makes a very cursory statement that the Card Agreement was not signed or acknowledged, lacked mutual assent, and lacked documentation of delivery. (Pl.'s Suppl. Notice).  But he provides no facts or information to support those points. And in any event, South Dakota law permits assent by receipt of the terms and use of the card: "use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card."  S.D. Codified Laws § 54-11-9.  In light of the foregoing—the receipt of the Agreement, the failure to reject its terms, and the use of the card, which under governing law provides a basis to infer assent—Johnston and Citibank agreed to arbitration.  *E.g.*, *Wheeler v. Cavalry SPV I, LLC*, 593 F. Supp. 3d 878, 883 (W.D. Wis. 2022) ("[T]he mailing of the 2016 Agreement constituted an offer and Wheeler's continued use of her card was an acceptance of the terms and conditions—including the arbitration clause—set forth in the Agreement." (citing S.D. Codified Laws § 54-11-9)); *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 920 (S.D. Cal. 2021) ("Plaintiff agreed to arbitrate by failing to rebut the evidence

that he (1) received the Card Agreement and (2) used his card following receipt of the new terms.").

The Court now turns to whether Johnston's claims fall within the scope of the Agreement's arbitration clause.[2] *Nicosia*, 834 F.3d at 229 ("The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.").

Citibank argues that Johnston's claim relates to his relationship with Citibank and is therefore within the scope of the arbitration provision. (Def.'s Mot. at 4). Johnston's claim that Citibank violated TILA and the Card Agreement by failing to provide 45-day notice of an APR increase is plainly encompassed. Johnston does not make any argument that his claims fall outside the scope of the provision in the Card Agreement, but he does contest arbitration on two other grounds.

First, Johnston argues that his claim under TILA and its implementing regulations is not arbitrable, because that would frustrate the statute's purpose and his ability to enforce his rights under federal law. (Pl.'s Opp'n at 1–2). But in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 84 (2000), the Supreme Court rejected an argument that an individual could not effectively vindicate her rights under TILA in arbitration. And courts in this Circuit regularly follow that direction. *E.g.*, *Morehouse v. PayPal Inc.*, No. 21-CV-4012, 2022 WL 912966, at *6 (S.D.N.Y. Mar. 28, 2022) (collecting

---

[2] Neither party contends that the issue of arbitrability should be reserved for the arbitrator. Thus, despite the broad arbitration provision and incorporation of the American Arbitration Association procedural rules—factors that indicate arbitrability issues go to the arbitrator in the first instance, *see DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318–19 (2d Cir. 2021)—the Court resolves the inquiry.

cases); *Zandman v. Citibank, N.A.*, No. 18-CV-0791, 2020 WL 354787, at *1 (S.D.N.Y. Jan. 21, 2020) (affirming award following arbitration of TILA claims involving Citibank credit card); *Cho v. JS Autoworld 1 Ltd.*, 97 F. Supp. 3d 351, 357–58 (E.D.N.Y. 2015) ("[T]he Plaintiff does not dispute the fact that TILA claims are arbitrable, nor could she."). Nor does Johnston's allegation that his injury was not an isolated instance but a deliberate unlawful act by Citibank render his claim ineligible for arbitration. Johnston is free to pursue such arguments about Citibank's practices—and vindicate any potential statutory violations—before the arbitrator.[3]

Second, Johnston argues that Citibank waived its right to arbitration because it did not raise arbitration in small claims court—but instead, removed the case to federal court and moved to compel arbitration five weeks later. (Pl.'s Opp'n at 3). A moving party may "knowingly relinquish the right to arbitrate by acting inconsistently with that right." *Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122, 130 (2d Cir. 2025) (applying *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)). To determine whether a party relinquished the right to arbitrate, courts must consider "all aspects of the moving party's conduct . . . as long as [they] do not do so through the lens of prejudice." *Id.* Those aspects include: (1) "the time elapsed from when litigation was commenced until the request for arbitration;" and (2) "the amount of litigation to date, including motion practice and discovery." *Id.* at 126 (quotation omitted). For example, in *Doyle*, the Second Circuit explained that UBS acted inconsistently with the right to arbitrate

---

[3] Johnston's citation to *Lotsoff v. Wells Fargo Bank, N.A.*, No. 18-CV-2033, 2019 WL 4747667 (S.D. Cal. Sep. 30, 2019), is inapposite because that case found an arbitration provision unenforceable under unique provisions of California law. *Id.* at *4–*5.

because it first sought "full and final resolution" of the claims against it in federal court, including by filing a motion to dismiss instead of an answer. *Id.* at 132.

Citibank did not act inconsistently with its right to arbitrate. Removal from state court, filing an answer—which includes arbitration as an affirmative defense—one week later, (Answer dated June 18, 2025, Dkt. No. 6 at 2), notifying the Court of a forthcoming motion to compel arbitration two weeks later, (Def.'s Letter dated June 30, 2025, Dkt. No. 14 at 1), and filing that motion three weeks thereafter is not indicative of waiver. *E.g.*, *State Farm Mut. Auto. Ins. Co. v. Emuna Inc.*, No. 25-CV-3076, 2026 WL 247514, at *6 (E.D.N.Y. Jan. 30, 2026) ("[T]here has been no significant motion practice in either the federal or state cases. Unlike UBS in *Doyle*, the parties here do not allege that the state court actions include any motions to dismiss or summary judgment, substantial discovery, or trial. Accordingly, the conduct undertaken here is not substantial enough under *Doyle* . . . to find that arbitration has been waived." (citation omitted)).

For the same reasons that Johnston's anti-arbitration arguments are without merit, his earlier motion to strike Citibank's affirmative defenses, (Pl.'s Mot. to Strike Affirmative Defenses dated Jun. 21, 2025, Dkt. No. 10), is denied.

CONCLUSION

The motion to compel arbitration is granted. Johnston's motion to strike is denied. Citibank and Johnston are directed to proceed in arbitration. The Clerk of Court is directed to administratively close this case. *Zimmerman v. UBS AG*, 789 F. App'x 914, 916 (2d Cir. 2020) ("As a result, the district court's order to 'close' the case

with leave to reopen within 30 days of the conclusion of arbitration proceedings functionally amounted to a stay of the proceedings, notwithstanding that the case would end if the parties chose not to reinstate it."); *see also Bernardino v. Barnes & Noble Booksellers, Inc*, 763 F. App'x 101, 103 (2d Cir. 2019) ("[T]his Court has previously determined that there is 'no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience.'"(quoting *Filanto, S.p.A. v. Chilewich Int'l Corp.*, 984 F.2d 58, 61 (2d Cir. 1993))).

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   March 18, 2026
        Central Islip, New York